UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| ANA McDONALD, | ) |
| --- | --- |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| vs. | ) Case No. 4:06CV1599 CDP |
|  | ) |
| NELNET, INC. | ) |
|  | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

Plaintiff Ana McDonald, like many other plaintiffs in recently-filed cases, brings this suit under the Fair Credit Reporting Act (FCRA) against a lender who accessed her credit report without her knowledge and then sent her a mailing purporting to offer credit. Whether this access of credit information without the consumer's consent violates the law depends on whether it is a "firm offer of credit" as defined by the FCRA. That, of course, depends on what the particular mailing said. In McDonald's case the loan product is a student loan consolidation. I have not found any decisions in similar cases involving student loan consolidations.

Defendant Nelnet, Inc. has moved to dismiss the complaint, arguing that this particular flyer meets the "firm offer of credit" definition because, in a different statute, Congress has set the material terms that must be offered in any student

loan consolidation. I agree that when this mailing is read in light of the Congressional mandates of the Higher Education Act, it meets the "firm offer of credit" definition set out in the FCRA. Nelnet cannot be liable to McDonald for obtaining her credit information for this purpose, and so I will grant the motion to dismiss.

**I.     Background**

In April 2006, Ana McDonald received a "prescreened" promotional letter from Nelnet. The front side of this letter states in relevant part:

> **IF YOU CONSOLIDATE YOUR STUDENT LOANS IMMEDIATELY**, you can still lock in this year's low interest rate before the increase takes effect .... We can help you lock in an interest rate as low as 4.75%. And, with our borrower benefits you could reduce your rate to 3.5%.

The mailer also includes two footnote that discuss interest rates:

> The consolidation loan interest rate is calculated by taking a weighted average of the rates on the federal loans you are consolidating rounded up to the nearest one-eighth percent, not to exceed 8.25%. . . .
>
> The 4.75% interest rate is available prior to July 1, 2006, for borrowers consolidating in their grace period. Interest rates described are in effect through June 30, 2006, unless otherwise indicated . . . Nelnet reserves the right to modify or terminate the borrower benefits programs at its discretion and without prior notice.

The mailer does not state any other terms of the loan.

## II. Discussion

A defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Rule 12(b)(6), Fed. R. Civ. P. The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim entitling it to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Young v. City of St. Charles, Mo., 244 F.3d 623, 627 (8th Cir. 2001). When considering a motion pursuant to Rule 12(b)(6), the factual allegations of a complaint are assumed true and are construed in favor of the plaintiff. Neitzke v. Williams, 490 U.S. 319, 326 (1989).

When ruling on a motion to dismiss, a court must primarily consider the allegations contained in the complaint, but other matters referenced in the complaint may also be taken into account. Deerbrook Pavilion, LLC, v. Shalala, 235 F.3d 1100, 1102 (8th Cir. 2000). "A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed. R. Civ. P. 10(c). Because the mailer is attached as an exhibit to McDonald's complaint, I may consider its terms in ruling on the motion to dismiss. See Centers v. Centennial Mortg., Inc., 398 F.3d 930, 933 (7th Cir. 2005) ("[A] plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is

not entitled to relief.").

Congress passed the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., to preserve consumer privacy in the information maintained by consumer reporting agencies. See § 1681(a)(4) ("There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy."). The act sets out certain permissible purposes for which a consumer reporting agency may release credit reports and prohibits other releases. Most of the permissible purposes involve situations where the consumer has authorized or initiated the release, but there are exceptions.

One of the exceptions allows a credit provider to access consumer information in order to make a "firm offer of credit." 15 U.S.C. § 1681b(c)(1)(B)(i). This provision enables a lender such as Nelnet to provide certain criteria to a credit agency and then to receive – without the consumers' consent – basic contact information about consumers who meet those criteria. The exception does not allow a potential lender to access the full credit report, but instead allows it to obtain the consumer's name, address, and other information that does not identify any particular past credit transaction of that consumer.

In creating this exception, Congress allowed lenders to access credit reports

for the purpose of making unsolicited mailings to consumers, so long as the lender actually offered the consumer something, that is, so long as the lender made a "firm offer of credit." As one court has noted, Congress "balanced any privacy concerns created by pre-screening with the benefit of a firm offer of credit or insurance for all consumers identified through the screening process." <u>Cole v. U. S. Capital, Inc.</u>, 389 F.3d 719, 725 (7th Cir. 2004) (quoting S. Rep. No. 103-209, 13 (1993)). "Congress apparently believes that people are more willing to reveal personal information in return for guaranteed offers of credit than for catalog and sales pitches." <u>Trans Union Corp. v. FTC</u>, 267 F.3d 1138, 1143 (D.C. Cir. 2001).

Congress, however, did not specify what, if any, credit terms had to be included for something to be a "firm offer." The statute does not say that the loan amount, interest rate, or a payback period be stated. Instead, the FCRA defines "firm offer of credit" as "any offer of credit or insurance to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer." 15 U.S.C. § 1681a(l). The statute provides that the offer may be conditioned on three specific requirements. First, the creditor may apply additional pre-selection criteria relating to the consumer's creditworthiness. § 1681a(l)(1). Second, the offer may be conditioned on verification "that the

consumer continues to meet the specific criteria used to select the consumer for the offer." § 1681a(l)(2). Finally, the firm offer may be conditioned on the consumer's furnishing any collateral that was established before the selection of the consumer for the offer and was disclosed in the offer. §1681a(l)(3).

McDonald is one of many consumers who have filed actions under the statute after receiving unsolicited mailings from companies seeking to lend them money. Courts deciding whether a particular flyer fits the "firm offer of credit" exception have struggled to articulate a consistent definition or test. I have concluded that a firm offer of credit must have some value to a consumer that is more than nominal.

The "some value" test comes from Cole v. U. S. Capital, Inc., 389 F.3d 719 (7th Cir. 2004). In Cole the court held that an unsolicited mailing offering a $300 credit that could only be used to purchase a vehicle at a particular car dealership did not have any value to the consumer, and therefore was not covered by the FCRA exception.[1] The court rejected the defendant's argument that some offer of guaranteed credit – no matter how small – met the statutory definition, because that would allow anyone to access a consumer's credit report simply by offering,

---

[1] The Cole mailer appeared to offer other things, including a $2000 limit credit card and $19,500 auto financing, but because the flyer also said that approval of those offers was not guaranteed, the Court considered only whether the $300 credit had value.

for example, one dollar in guaranteed credit. So, the court reasoned, there must be "sufficient value for the consumer to justify the absence of the statutory protection of his privacy." Id. at 726. Otherwise an offer of credit would be no more than a sham, or the equivalent of an advertisement. " . . . Congress did not intend to allow access to consumer credit information 'for catalogs and sales pitches.'" Id. at 727 (quoting Trans Union, 267 F.3d at 1143). Courts must look to the entire offer and all material conditions of the credit product to make this determination. If the offer was "a guise for solicitation rather than a legitimate credit product" it cannot be a firm offer. Id. at 728. Additionally, the Court noted that terms such as interest rate, methods of computing interest, and length of repayment "may be so onerous as to deprive the offer of any appreciable value." Id.

The Seventh Circuit noted, in Murray v. GMAC Mortgage Corp., 434 F.3d 948, 955-56 (7th Cir. 2006), that the value of an offer is an objective standard, and stated that courts should look to the four corners of the offer to determine whether it has value. More recently, in Perry v. First National Bank, 459 F.3d. 816 (7th Cir. 2006), the court found that an offer of a $250 limit credit card had sufficient value to fit the statutory exception, even though the interest rate was 18.9% and the fees would result in the consumer being billed $175 in the first monthly bill.

Several cases have interpreted Cole strictly, and have held that there can be

no firm offer unless all material terms such as amount and interest rate are defined. For example, in Hernandez v. Chase Bank USA, N.A., 429 F. Supp. 2d 983 (N.D. Ill. 2006), the court found no firm offer of credit in a flyer stating that the recipient had been "pre-qualified for up to $100,000 or more" to be secured by the recipient's residence. The court held that the terms of the loan were so vague that they had no value to a consumer. The loan would only be issued depending on information to be provided by the consumer, and the terms could be changed without notice. 429 F. Supp. 2d at 988. In Murray v. E*Trade Financial Corp., 2006 WL 2054381 (N.D. Ill. July 19, 2006), the court interpreted Cole to say that there is no value if the interest rate or repayment provisions are not included. Id. at *3. In Murray v. Finance America, LLC, 2006 WL 862832 (N.D. Ill. April 4, 2006), there was no firm offer where the amount of the loan, the interest rate, and length of time were not specified. See also Klutho v. Home Loan Center, Inc., No.4:06CV1212CDP, 2006 WL 3836389 (E.D. Mo. Nov. 1, 2006).

On the other hand, several courts have granted motions for summary judgment or to dismiss, finding that the firm offer of credit exception applied even in the absence of specified interest rates or other terms. In Murray v. HSBC Auto Finance, Inc., 2006 WL 2861954 (N.D. Ill. Sept. 27, 2006), the Court found a firm offer of credit where the flyer said the person had been pre-selected for an auto

refinance loan in a minimum amount of $5000. The flyer also stated that the recipient might be able to reduce her rate by as much of 5.04%, and that percentage was based on the average rate reduction obtained by the defendant's customers. The court in Bonner v. Cortrust Bank, N.A., 2006 WL 1980183 (N.D. Ind. July 12, 2006), which was decided before the Seventh Circuit's Perry case, considered a credit card offer similar to that in Perry and concluded that it met the firm offer of credit definition. In Purkowski v. Irwin Home Equity Corp., 423 F. Supp. 2d 1053 (N.D. Cal. 2006), a mailer offering a minimum 20-year, $15,000 line of credit with a maximum interest rate of 24% was a firm offer of credit. See also Klutho v. GE Money Bank, No. 4:06CV1319HEA, 2007 WL 162291 (E.D. Mo. Jan. 17, 2007); Poehl v. Countrywide Home Loans, Inc., 464 F. Supp. 2d 882 (E.D. Mo. 2006).

Congress carefully crafted its definition of "firm offer" and chose not to require that the lender specify particular loan terms. Instead, Congress provided a number of "outs" for a lender, including additional pre-selection criteria, verification, and collateral requirements. If Congress had wanted the FCRA to require that loan amounts, interest rates, or payback times be specified in a "firm offer," it could have done so. So long as the statutory criteria are met, and so long as there is some value to the consumer so that the offer is not a sham or mere

solicitation, then the absence of interest rates and other terms does not prevent the offer from being a "firm offer of credit."

This case is different from the cases cited above, however, because it involves a student loan consolidation. In the Higher Education Act of 1965, as amended, Congress set specific requirements for consolidation of student loans. 20 U.S.C. § 1078-3(b)(1)(c) requires the minimum amount of the loan to equal the "sum of the unpaid principal and accrued unpaid interest and late charges of all eligible student loans received by the eligible borrower which are selected by the borrower for consolidation." Thus, although not set out on the face of the document, the mailer did contain an offer for at least a minimum amount of loan. Unlike the home equity loan context, the amount of a student loan consolidation is set by law, and depends on the amount of existing student loans the recipient has to consolidate. Therefore, in offering to consolidate McDonald's student loans, Nelnet was offering a loan of more than nominal value.

Even though the exact amount of interest that would be charged is not apparent from the face of the mailer itself, this rate is also specified by law, and could be readily calculated from the information contained in the mailer together with the rates of the student loans that McDonald already had. McDonald knew or could easily obtain information regarding the interest rates on her current student

loans.

Additionally, the mailer meets the FCRA requirement that the offer "will be honored" if the consumer is determined to meet the specified criteria. Although McDonald points to the language stating that borrower benefit programs can be changed at the lender's discretion, a fair reading of the notice shows that language does not refer to the consolidation loan itself, but to other "benefit programs." The "prescreened" notice portion of the mailer contains the statutory language indicating that the offer is based on evidence in the credit report showing McDonald met certain criteria, and says "This offer is not guaranteed if you do not meet our criteria." This follows the statutory requirements, and the offer is one that "will be honored" as required by the law. Accordingly,

**IT IS HEREBY ORDERED** that Defendant Nelnet's motion to dismiss [#5] is granted.

A separate Order of Dismissal reflecting this Memorandum and Order is entered this same day.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of February, 2007.